### Richmond

WINSLOW, INC., ET AL., ETC.

v.

WILLIAM M. SCAIFE, JR., ET AL.

January 21, 1983.

Record No. 801084.

Present: All the Justices.

*Daniel H. Borinsky; Robert J. Zelnick* for appellants.
*Robert H. Metcalf (William S. Smithers, Jr.; Newman and Metcalf; Thompson, Savage & Smithers,* on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

In *Winslow v. Scaife,* 219 Va. 997, 254 S.E.2d 58 (1979), we reversed the trial court for sustaining a plea of the statute of limitations and remanded the case for further proceedings. Upon remand, the trial court granted a motion for summary judgment, and we now review the propriety of that ruling.

The chronology is important. On July 10, 1973, Winslow, Inc., and Richard B. Colyer, t/a Tanglewood Lake, a partnership (hereinafter, the Plaintiffs), entered into a contract to sell to Charles E. Minor Construction Company, Inc. (Minor), certain real estate in Caroline County. The contract had been prepared by Fredericksburg attorneys William M. Scaife, Jr., and Gerald F. Dalton, then representing Minor, and recited that settlement would occur in their office. Specifically, it provided for a sale price of $210,270, payable as follows: $1,000 cash upon execution of the contract; assumption by Minor of a deed of trust of approximately

$35,250 (the Beasley deed of trust) and a second deed of trust of $15,480 (Universal deed of trust); and lastly, a promissory note in the amount of $106,470, executed by Minor in favor of the Plaintiffs, and secured by a third deed of trust on the subject property (Winslow deed of trust).

Minor subsequently applied to First Mortgage Corporation (First Mortgage) for additional financing. In early September, 1973, First Mortgage offered a land acquisition and development loan not in excess of $230,000, provided that the underlying note was secured by a blanket deed of trust and that the property was otherwise free and clear of liens at the time of the initial advance. The supplemental financing was accepted by Minor.

A follow-up letter addressed to Minor from First Mortgage, with copy to Scaife, dated September 14, 1973, stated:

> In accordance with your request, we have no objection to there being an existing purchase money deed of trust on the property provided it is subordinated to the lien of the deed of trust with the understanding that our deed of trust will be superior at all times.

On September 24, 1973, the first advance in the amount of $90,000 was forwarded to Scaife by First Mortgage. Two days later, settlement occurred. The closing statement reflects the payoff of the Beasley deed of trust; assumption of the Universal deed of trust; and the execution of the Winslow deed of trust in the amount of $106,470. On the same day, Scaife sent a letter to the clerk of the circuit court of Caroline County in which he prescribed the order of recordation and enclosed the various documents. In his letter, Scaife instructed the clerk to record the documents in the following sequence: deed from Plaintiffs to Minor; deed of dedication and plat; First Mortgage deed of trust; subordination of Universal deed of trust to First Mortgage deed of trust; Winslow deed of trust; and relocation of right of way easement. The briefs state that, pursuant to these instructions, on October 1, 1973, the clerk recorded the First Mortgage deed of trust at 11:44 a.m. and the Winslow deed of trust at 11:48 a.m.

Without notifying the Plaintiffs, Scaife, contrary to the terms of the contract of sale, thereby subordinated Plaintiffs' deed of trust to the First Mortgage deed of trust, given by Minor to secure the

$230,000 note. Minor subsequently filed for bankruptcy and was discharged from liability on all obligations.

In 1975, the Plaintiffs filed a bill of complaint in the circuit court of Caroline County against numerous parties, including the clerk, Minor, First Mortgage, Scaife, and the trustees under each deed of trust, alleging that the order of recordation resulted from a mutual mistake and praying that it be reformed to conform to the original intention of the parties. Scaife averred in his answer that subsequent to the execution of the contract, the parties had amended their agreement and that he closed the sale precisely in conformity with these amended instructions. He also denied that the Plaintiffs were entitled to any relief and that there was any improper act of recording, mistake, or fraud.

On January 3, 1977, the trustees under the First Mortgage deed of trust foreclosed upon the real estate and sold it at public auction for $85,000. All funds remaining after deducting the costs of the foreclosure sale were paid to First Mortgage. The Plaintiffs received nothing, and their note is in default with the remaining balance of $97,316.06.

The Plaintiffs filed a motion for judgment in the instant case against Scaife and Dalton on July 12, 1976, alleging that Minor's discharge, combined with the improper recording, rendered their note and deed of trust worthless; that the defendants breached their duty to the Plaintiffs by incorrectly subordinating the Winslow deed of trust; and that but for this breach the Plaintiffs would have been protected in the event of Minor's default. The defendants filed a plea of statute of limitations, the trial court sustained the plea, and the case was dismissed on March 10, 1977. On April 20, 1979, we reversed and remanded the case for further proceedings. *Winslow* v. *Scaife, supra.*

Within a month, defendants filed a responsive pleading labeled "Answer," in which they categorically denied every allegation contained in the motion for judgment and called for "strict proof thereof." A trial date of November 2, 1979, was scheduled.

In their response to Plaintiffs' various interrogatories and requests for production of documents, the defendants stated that sometime between the execution of the contract and the settlement they received oral instructions that the written terms of the contract had been modified so that the Winslow deed of trust was to be recorded after the First Mortgage deed of trust and that the Plaintiffs knew of and consented to the subordination of the lien of

the Winslow deed of trust. The Plaintiffs also took the deposition of Scaife in the course of which he said:

[Borinsky (Plaintiffs' attorney)]: Do you recall doing anything regarding the financing? Any work with lenders? Or, having any discussions with Mr. Minor or his company regarding the financing for this contract?

[Scaife]: Yeah. Finally, Minor told me that it was agreed that First Mortgage would make a loan on the property for acquisition and development; that the existing first deed of trust on the property held by people named Beasley was going to be paid off by the sellers; that an existing . . . deed of trust held by . . . [Universal] would be subordinated to the First Mortgage Trust. And, the sellers, Winslow and Collier [sic] would take a subordinate position.

. . . .

[Borinsky]: Did you prepare a deed of subordination subordinating his trust to the First Mortgage Trust?

[Scaife]: Yes.

. . . .

[Borinsky]: Who was present at settlement?

[Scaife]: Well, Winslow was there, I was there. I think Minor was there . . . .

. . . .

[Borinsky]: Was there any discussion or any discussion as to the priority of the various deeds of trust that were affecting this property?

[Scaife]: No. There never is. That was understood, as far as I was concerned.

[Borinsky]: Did you, at any time, discuss the priority of the deeds of trust with Mr. Winslow? Or, with Mr. Collier [sic] or any of their agents?

[Scaife]: . . . . [N]o, not specifically; although, of course, the papers were there as part of the proceeding. Various First Mortgage Corporation papers were signed.

. . . .

[Borinsky]: Did you ever discuss with Mr. Winslow, either then or any other time, the fact that he was going to be junior to the First Mortgage loan?

[Scaife]: Not specifically, no. There wasn't any need to.

The defendants filed their motion for summary judgment on October 29, 1979, alleging for the first time that as a matter of law Winslow's deed of trust was a purchase money deed of trust and this was superior to the First Mortgage deed of trust, regardless of the order of recordation; and that, even if proven, their alleged negligence cannot as a matter of law be determined to have caused Plaintiffs' loss or damage.

After written memoranda were filed and oral arguments were held, the trial court, on April 14, 1980, granted the motion for summary judgment. In their assignments of error, the Plaintiffs contend: (1) the granting of the summary judgment was improper; and (2) the defendants were estopped to claim that Plaintiffs' deed of trust was a purchase money deed of trust.[1] We agree and reverse.

## I. *Summary Judgment.*

■ When the trial court ruled on the motion for summary judgment, the case was in the following posture: Plaintiffs accused the defendants of a breach of their duty as escrow agent by changing the priority of the liens upon the land involved; defendants denied all factual allegations made by the Plaintiffs and alleged no additional facts by way of defense; pretrial discovery (interrogatories and deposition of Scaife) had taken place, the effect of which was to confirm the allegations of defendants' responsive pleading; and by agreement most of the documents relating to the transaction had been put into evidence. Neither the Winslow nor the First Mortgage deeds of trust, however, were in evidence.[2]

At this stage of the proceedings, summary judgment was inappropriate. From the pleadings and evidence before the court, we conclude that material facts as to whether Plaintiffs actually instructed Scaife to subordinate their deed of trust to the lien of First Mortgage remained in dispute and that the trial court erred in entering summary judgment. Rule 3:18; *Goode Adm'r.* v. *Courtney*, 200 Va. 804, 108 S.E.2d 396 (1959).

---

[1] Plaintiffs also complain that the trial court erred in holding that their deed of trust was a purchase money deed of trust, but in view of our disposition of the other assignments of error, we do not reach this question.

[2] Hence, in view of the new position taken by defendants in the motion for summary judgment, the court below was being asked to construe these instruments even though neither was before the court except by way of a passing reference in the pleadings.

## II. *Estoppel.*

Plaintiffs argue that the defendants are estopped from raising the issue whether, being a purchase money deed of trust, the Winslow deed of trust was superior to all liens regardless of the actual order of recordation. We agree.

In their motion for summary judgment, the defendants for the first time raised that defense. Essentially, the defendants are now arguing that the Winslow deed of trust remains an outstanding encumbrance on the land and that the Plaintiffs still have recourse against the property, First Mortgage, and its trustees.

If Scaife felt that this defense was proper, he was obligated to raise it in the earlier Caroline County chancery suit. Since First Mortgage and its trustees were parties to that proceeding, the priority of the various liens could have been fully litigated there before any foreclosure or conveyance of the real estate had taken place.

We are committed to the principle that "[w]e do not permit a litigant to assume inconsistent and mutually contradictory positions. *McLaughlin* v. *Gholson,* 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970); *Rohanna* v. *Vazzana,* 196 Va. 549, 553-54, 84 S.E.2d 440, 442 (1954); *Burch* v. *Grace Street Bldg. Corp.,* 168 Va. 329, 340, 191 S.E. 672, 677 (1937)." *Strickland* v. *Dunn,* 219 Va. 76, 79, 244 S.E.2d 764, 766 (1978).

As is argued by the Plaintiffs in their brief, "applying the principle of estoppel, Scaife is bound by his pleadings, admissions and answers in the previous litigation and in the instant case, and is now barred and estopped from taking the inconsistent and contradictory position that the Winslow trust has priority over the First Mortgage trust."

We therefore reverse the judgment of the trial court and remand the case for a new trial on the merits in which the defendants are estopped from raising the issue of the superiority of a purchase money deed of trust.

*Reversed and remanded.*