**Jason Darius SPARROW, Petitioner,**

v.

**DIRECTOR, DEPARTMENT OF CORRECTIONS Respondent.**

No. ACTION. 1:05CV1178TS.

United States District Court, E.D. Virginia, Alexandria Division.

July 20, 2006.

Jason Darius Sparrow, Newport News, VA, Pro se.

Thomas Drummond Bagwell, Office of the Attorney General, Richmond, VA, for Respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

Petitioner, Jason Darius Sparrow ("Jason"), a Virginia inmate proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking the validity of his conviction in the Circuit Court for the City of Norfolk, Virginia. On February 1, 2006, respondent filed a

motion to dismiss pursuant to Rule 12, Fed.R.Civ.P., and an answer pursuant to Rule 5, Fed. R. Hab. P. Jason was given the opportunity to file responsive materials, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), and has done so. Accordingly, this matter is now ripe for adjudication. For the reasons that follow, Jason's petition must be dismissed.

## I.

The record reflects the following facts. On October 20, 2002, Jason and his identical twin brother, Johnny Donnell Sparrow ("Johnny"), were both arrested and taken to Norfolk City Jail for booking. During the booking process, Jason completed a standard fingerprint card where he signed Johnny's name instead of his own. When Jason's fingerprints from this card were found to match a previous fingerprint card he had completed on November 23, 1999,[1] he was charged with forgery of a public document, a felony under Virginia law. *See* Va.Code § 18.2–168.

At the subsequent bench trial, the government adduced expert evidence that the fingerprints on Jason's 1999 fingerprint card matched those on the fingerprint card that Jason completed in October 2002 and signed with his brother's name. In addition to establishing that the ink impressions from the 1999 and 2002 fingerprint cards were made by the same person, the fingerprint comparison expert also testified that "no two people have the same prints whether they are identical [twins] or not." Trial Tr. 42, 56, Apr. 28, 2003. The government also adduced evidence that showed the twins were booked at different times of the same day, and that unlike his brother, Johnny had no prior felony convictions.

Jason testified, in his defense, admitting that he had signed the 1999 fingerprint card and that his fingerprints were on that card. Johnny also testified on behalf of his brother, stating that on October 20, 2002, he had signed the same card on which he was fingerprinted and did not sign his brother's card. Additionally, he testified that he signs his name "Johnny D. Sparrow."[2] Significantly, the signature appearing on the October 20, 2002 fingerprint card with Jason's fingerprints is simply "Johnny Sparrow" without a "D." On this record, the trial court found there was ample evidence to convict Jason of forgery of a public document and sentenced him to four years incarceration with three years suspended. *See Commonwealth v. Sparrow,* No. CR03000678–00 (Va.Cir.Ct. Jun. 27, 2003).

Jason filed an appeal, which the Court of Appeals of Virginia denied on February 25, 2004. *Sparrow v. Commonwealth,* R. No. 1822–03–1 (Va.Ct.App. Feb. 25, 2004). Similarly, his appeal to the Supreme Court of Virginia was denied on July 1, 2004. *Sparrow v. Commonwealth,* R. No. 040656 (Va. July 1, 2004). Jason then filed a petition for writ of habeas corpus in the Supreme Court of Virginia alleging that

---

**1.** On November 23, 1999, the Norfolk City Police arrested Jason Sparrow for the manufacturing, selling, and possession of a controlled substance in violation of Virginia Code § 18.2–248. Upon entering a guilty plea, he was later convicted of possession of cocaine with the intent to distribute and sentenced to sixteen years and six months, with fifteen years suspended. *See Commonwealth v. Sparrow,* No. CR990049606–00 (Va.Cir.Ct. July 27, 2000).

**2.** Although Johnny testified to signing the same card with his fingerprints, only two fingerprint cards were introduced at trial: the November 23, 1999 card bearing Jason's fingerprints signed "Jason Sparrow," and the October 20, 2002 card also containing Jason's fingerprints, yet signed "Johnny Sparrow."

his trial counsel provided ineffective assistance (1) by failing to raise the issue that it was actually Jason's twin brother who was arrested, fingerprinted, and "bonded out" of the Norfolk City Jail under Jason's name on November 23, 1999, and (2) by providing flawed advice to Jason that he should not be fingerprinted at trial. Jason also alleged that his appellate counsel provided ineffective assistance by failing to consult with Jason prior to filing both direct appeals because Jason would have informed counsel that the fingerprints on the 1999 and 2002 cards were of his twin brother, who committed the forgery. On April 6, 2005, the Supreme Court of Virginia dismissed Jason's habeas petition. *Sparrow v. Dir. of the Dep't of Corr.,* R. No. 042518 (Va. Apr. 6, 2005).

On October 11, 2005, Jason filed the instant federal habeas corpus petition, alleging that his counsel provided ineffective assistance by allowing Jason to incriminate himself when he testified that the fingerprints and the signature on the November 23, 1999 fingerprint card were his, and by failing to obtain a handwriting expert to compare his signature with that of his identical twin brother.

## II.

◼ In reviewing a petition under 28 U.S.C. § 2254, the threshold inquiry is whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are barred by a procedural default. Respondent argues that review of Jason's federal habeas petition is barred because Jason has failed to exhaust the claims raised in the petition.

◼ Exhaustion is a matter of comity to the state courts, and failure to exhaust requires dismissal from federal court so that the petitioner may present his claims to the state courts. *See* 28 U.S.C. 2254(b), *Granberry v. Greer,* 481 U.S. 129, 134, 107

S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Rose v. Lundy,* 455 U.S. 509, 515–19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Thus, petitioner must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition.

◼ This does not mark the end of the exhaustion analysis, because "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran,* 220 F.3d 276, 288 (4th Cir.2000) (citing *Gray v. Netherland,* 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)). Significantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." *Id.* (quoting *Gray,* 518 U.S. at 162, 116 S.Ct. 2074).

◼ As Jason did not present the two ineffective assistance of counsel claims raised in the instant petition to the Supreme Court of Virginia, they are unexhausted. Both claims would now be procedurally barred under Virginia Code § 8.01–654(A)(2), which provides a one-year statute of limitations for filing a state habeas petition, and Virginia Code § 8.01–

654(B)(2), which bars successive habeas petitions. Since the procedural bar that gives rise to exhaustion is an independent and adequate state ground, both of the ineffective assistance of counsel claims raised in the instant petition must be treated as simultaneously exhausted and procedurally barred from federal habeas review. *See Baker*, at 288.

■ Yet, this does not end the analysis as a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir.1996). Jason does not allege, and the record does not establish, a valid claim of cause and prejudice to excuse the procedural default. In effect conceding this, Jason alleges instead that he is actually innocent of the crime charged and that a fundamental miscarriage of justice will result if federal habeas review is denied.

■ While it is well-settled that a fundamental miscarriage of justice will excuse a procedural default, the Supreme Court has made unmistakably clear that this should only rarely occur. To underscore this view, the Supreme Court has held that:

> [T]o ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the United States Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Accordingly,

claims of actual innocence presented to excuse a procedural default "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir.1998). To rely successfully on an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Royal v. Taylor*, 188 F.3d 239, 243–44 (4th Cir.1999) (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851). Especially important here is the settled principle that a petitioner seeking to excuse a procedural default with evidence of actual innocence "must offer 'new reliable evidence' [whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence] that was not presented at trial." *Id.* at 244, 188 F.3d 239 (quoting *Schlup*, 513 U.S. at 324, 115 S.Ct. 851).

■ Jason cannot meet the rigorous standard required to invoke the fundamental miscarriage of justice exception to the procedural default because he has introduced no new reliable evidence. In support of his claim of innocence, Jason argues only that it is his twin brother who is guilty of forgery. Specifically, Jason alleges that Johnny forged the November 23, 1999 fingerprint card by signing Jason's name. In an attempt to reconcile this allegation with his trial testimony, Jason now states that he erroneously incriminated himself at trial by admitting that he had signed the November 23, 1999 fingerprint card containing his fingerprints. In other words, Jason's innocence claim is based not on any new evidence, but rather at least in part, on a recantation of his own prior testimony. This is manifestly insufficient to support a valid claim of actual innocence to excuse procedural default.

Jason also argues that the evidence presented at trial proves his innocence and

Johnny's guilt because the fingerprints comparison expert confirmed the prints were the same, but that they were Johnny's not Jason's. Again, this bald contention is not evidence. Sworn testimony at trial directly contradicts this and hence this argument also falls far short to meeting the requirement of "new reliable evidence."

While his most recent version of events is wholly unsupported by the record, even if presumed true, none of his allegations present any "new reliable evidence" to support his actual innocence claim. In fact, all of the evidence Jason offers as proof of his actual innocence was presented at trial. He introduces nothing new, but presents instead a selective version of the facts and omits those facts belying his actual innocence claim. Moreover, Jason has not demonstrated that this is one of the "extraordinary cases" where lack of review on the merits would constitute a fundamental miscarriage of justice. *See Wilson,* 155 F.3d at 405 (habeas relief is only available "where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' ") (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). As Jason has not presented any new reliable evidence of his innocence, his assertions are insufficient to excuse the procedural default of his ineffective assistance of counsel claims, and his claims will be dismissed as procedurally defaulted.

Thus, respondent's Motion to Dismiss will be granted, and an appropriate Order will issue.